507 P.2d 460

**Efren HUERTA, Plaintiff-Appellant,**

v.

**The NEW JERSEY ZINC COMPANY,
Defendant-Appellee.**

**No. 1000.**

Court of Appeals of New Mexico.

Jan. 12, 1973.

Rehearing Denied Jan. 31, 1973.

Certiorari Denied March 2, 1973.

C. N. Morris, Silver City, for plaintiff-appellant.

Edward E. Triviz, Las Cruces, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

The appeal in this workmen's compensation case presents questions as to: (1) the action of the trial court being reviewed; (2) the limitation period for filing a workmen's compensation claim; and (3) the medical evidence.

*Action of the trial court being reviewed.*

Plaintiff's position is that he is appealing from a summary judgment in favor of defendant. Defendant asserts there has been a trial on the merits.

Defendant filed a motion for summary judgment. On the day set for the hearing on defendant's motion, plaintiff also filed a motion for summary judgment. At the hearing, plaintiff's counsel proposed that testimony be taken from Mr. Huerta. Defendant objected, asserting ". . . a motion for summary judgment doesn't contemplate testimony. . . ."

Plaintiff's counsel then explained that he was trying ". . . to dispose of it on the merits today . . .," moved to withdraw plaintiff's motion for summary judgment, and offered Mr. Huerta's testimony in opposition to defendant's motion for summary judgment.

After argument by counsel, both parties stated they were ready for trial. Defendant continued its objection to Mr. Huerta testifying in opposition to defendant's motion. After further argument, defendant changed its position. Defendant withdrew its objection to Mr. Huerta testifying, but stated it was not waiving its motion for summary judgment.

The trial court's response to this fairly lengthy interchange between counsel was "All right."

Thereafter, plaintiff's counsel asserted the only testimony to be offered was that of Mr. Huerta; all other evidence was by deposition. Defendant's counsel stated that what the defense had was by way of deposition.

Mr. Huerta's testimony was taken. The trial court took the matter under advisement and subsequently entered an order granting defendant's motion for summary judgment.

■ If all parties turn the summary judgment hearing into a trial, they cannot be heard to object to such procedure. 6 Moore's Federal Practice § 56.11(8) (1965). Defendant asserts this was done in this case. We cannot make such a determination as a matter of law. The trial court made no ruling at the conclusion of the interchange between counsel; we cannot determine from the record whether the hearing proceeded as a trial on the merits

or as a summary judgment hearing at which testimony was taken. With this ambiguity, we cannot say there had been a trial on the merits when the order entered by the trial court recites that the cause was heard on the motions of each of the parties for summary judgment, and the submissions of the parties in support of the motions, and orders that defendant's motion for summary judgment is granted.

■ It is true that the summary judgment does not include a statement of the trial court's reasons, but such is not required. The rule in Wilson v. Albuquerque Board of Realtors, 81 N.M. 657, 472 P.2d 371 (1970) was overruled in Garrett v. Nissen Corporation, 84 N.M. 16, 498 P.2d 1359 (1972).

■ Since we cannot state, as a matter of law, that the case was tried on its merits, our review will not be on the basis that the case had been so tried. Our review is on the basis of the action taken by the trial court; we review the summary judgment.

*Limitation period for filing a claim.*

On December 13, 1967, plaintiff was involved in an accident at the mine where he was employed. He filed his compensation claim on November 9, 1970. We summarize a portion of the medical evidence in the depositions.

Plaintiff was seen by Dr. Cobb on the day after the accident. A muscle strain was diagnosed; a mild pain killer was administered. The doctor was of the opinion that plaintiff could continue to work.

Plaintiff returned to his regular employment and continued in that employment for the remainder of 1967, 1968 and until September, 1969. Through this period of time he was aware of "back" problems. On September 9 and 19 of 1969, plaintiff was seen by Dr. Fowler. He complained of low back pain and told the doctor "that he just couldn't work." Although plaintiff places his visits to Dr. Fowler somewhat later, he agrees that at the time of the visits he had severe low back pain and ". . . it was getting difficult for me to walk." According to plaintiff, he contin-

ued with his duties at the mine until October 14, 1969, at which time he was hospitalized. He continued under Dr. Fowler's care up into April, 1970. Dr. Fowler's impressions in connection with plaintiff's complaints were possible osteoarthritis and possible gout. In the fall of 1969, Dr. Fowler twice released plaintiff to return to work. Dr. Fowler did not think that plaintiff attributed his back problems to the accident in 1967 until plaintiff was seen by Dr. Jones.

Dr. Jones, upon reference from Dr. Fowler, saw plaintiff for the first time on December 11, 1969. He saw plaintiff several times thereafter up into January, 1970. Tests were essentially negative; plaintiff's low back problem was based on subjective complaints and, according to Dr. Jones, had improved while under his care.

Plaintiff was seen by doctors at a Veterans Hospital in January, 1970; their findings and opinions do not differ materially from those of Dr. Fowler and Dr. Jones.

Dr. Palafox first saw plaintiff on October 21, 1970, and saw plaintiff at intervals thereafter. Dr. Palafox was of the opinion that plaintiff suffered from a "discogenic syndrome" and a "functional overlay" which were disabling and which resulted from the accident at the mine in 1967.

Section 59–10–13.6, N.M.S.A.1953 (Repl. Vol. 9, pt. 1, Supp.1971) provides a workman is to file his claim ". . . not later than one [1] year after the failure or refusal of the employer or insurer to pay compensation. This one [1] year period of limitations shall be tolled during the time a workman remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one [1] year. . . ."

Since plaintiff continued in the employ of defendant until his hospitalization in October, 1969, the one year tolling of the limitation period applied. Thus, the limitation period could not have begun to run prior to December 13, 1968; one year after the accident. Thereafter, the applicable rule concerning the running of the limitation period is stated in Duran v. New Jersey Zinc Company, 83 N.M. 38, 487 P.2d 1343 (1971) as follows:

"The period of limitations does not commence to run until it becomes reasonably apparent, or should become reasonably apparent, to the workman that he has an injury for which he is entitled to compensation." [Citation omitted]

In this case plaintiff had back complaints but no physician associated those complaints with plaintiff's accident at the mine until October, 1970. According to Dr. Fowler, plaintiff did not attribute his back problems to the mine accident until he was seen by Dr. Jones in December, 1969. Although there are conflicting inferences in plaintiff's testimony, plaintiff testified at the hearing that he did not realize he was entitled to any workmen's compensation benefits ". . . until Doctor Palafox told me that it could have been from the blast [mine accident]." See Hinojosa v. Nielson, 83 N.M. 267, 490 P.2d 1240 (Ct.App.1971).

The foregoing shows there was a material issue of fact as to whether the limitation period had run. Duran v. New Jersey Zinc Company, supra; Brown v. Safeway Stores, Inc., 82 N.M. 424, 483 P. 2d 305 (Ct.App.1970). Summary judgment on this issue was improper.

*Medical evidence.*

In his deposition, Dr. Palafox testified that plaintiff suffered both from a "discogenic syndrome" and a "functional overlay." According to the doctor, these items resulted from the accident.

Defendant asserts the testimony of Dr. Palafox does not raise a factual issue as to a disability caused by the accident as a medical probability by expert medical testimony. See § 59–10–13.3(B), N.M.S.A.1953 (Repl.Vol. 9, pt. 1). The essence of defendant's argument is that Dr. Palafox is not to be believed.

Defendant's contention is without merit. The trial court is not to weigh the

evidence in considering the merits of a motion for summary judgment. Hinojosa v. Nielson, supra. Nor can this court do so on appeal. Duran v. New Jersey Zinc Company, supra. Summary judgment on this issue was improper.

The record showing that plaintiff's claim was disposed of by summary judgment and summary judgment on the issues presented being improper, that judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I disagree with reversal and favor remand for the trial court to make findings of fact and conclusions of law. I hope this will happen anyway.

On August 12, 1971, the case came on for *trial*. Defendant desired to be heard on its motion for summary judgment. It requested that the court reserve ruling on the motion until after plaintiff testified. After some discussion, defendant's attorney stated that "rather than delay the matter any more I would just as soon proceed now and if the Court wants to hear supplemental testimony of Mr. Huerta in relation to all the other depositions, including his, and permit me to cross-examine, I am ready to proceed." The case proceeded to trial. Plaintiff testified.

On March 20, 1972, seven months later, the trial court entered an order granting defendant's "motion for summary judgment" without stating any reasons therefor, and dismissed plaintiff's complaint with prejudice. Rule 56(c) [§ 21-1-1(56)(c), N.M.S.A.1953 (Repl.Vol. 4)] was not followed. It was in effect a final judgment.

I agree with defendant's argument that ". . ., if all parties desire to and do turn the summary judgment hearing into a court trial, they cannot be heard to object. In that event the court should make findings of fact and conclusions of law in accordance with Rule 52." 6 Moore's Federal Practice, § 56.11(8), pp. 2206, 2207. No such findings or conclusions were made. Because of the confusion in the record, no waiver occurred. The trial court did not find or state in its judgment that no genuine issue of any material fact was presented and that the defendant was entitled to judgment as a matter of law. Under the circumstances of this case, the plaintiff was entitled to know upon what grounds the order was entered to properly present a controversial issue to this court. Even under summary judgment proceedings, the trial court may, if it desires, furnish a statement of its reasons, including such findings of fact and conclusions of law as might be appropriate. Wilson v. Albuquerque Board of Realtors, 81 N.M. 657, 472 P.2d 371 (1970); the trial court is not required to do so. Garrett v. Nissen Corporation, 84 N.M. 16, 498 P.2d 1359 (1972). It should also be pointed out that Rule 52(B) [§ 21-1-1(52)(B), N.M.S.A.1953 (Repl.Vol. 4)] specifically provides that "Findings of fact and conclusions of law are unnecessary in decisions on motions under Rules . . . 56 . . ."

The parties agreed to and did try the case on its merits based upon depositions on file and the testimony of plaintiff. The parties should not be allowed to blow the case wide open and let confusion rule the roost.

This cause should be remanded to the trial court to vacate the judgment below and proceed with Rule 52(B), supra, Findings of Fact, and thereafter render judgment from which an appeal lies. Section 21-1-1(54), N.M.S.A.1953 (Repl.Vol. 4).