CARLSON, Presiding Justice,
for the Court:
¶ 1. This case has a long history and is before this Court for the second time. In the first appeal, Guidant Mutual Insurance Company (Guidant) appealed from the trial court’s ruling, and this Court reversed and remanded. See Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am., 18 So.3d 1270 (Miss.2009) (hereinafter “Guidant I”). Now, Indemnity Insurance Company of North America (INA) appeals from the trial court’s decision on remand. INA claims that the trial court erred in granting summary judgment in favor of Guidant and in denying INA’s request for prejudgment interest. We affirm in part, reverse in part, and remand for the trial court’s entry of a final judgment consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶2. On November 22, 1994, while en route to the scene of a fire, volunteer fireman James Hingle collided with a vehicle occupied by Sam and Ruby Anderson. Hingle was driving his personal vehicle at the time of the accident. On November 15, 1995, the Andersons filed suit in the Circuit Court of Marshall County against Hingle, Marshall County, the volunteer fire department, and the Marshall County Board of Supervisors. The Andersons claimed that their injuries and damages amounted to $4,150,000.
¶ 8. At the time of the accident, Hingle had two insurance policies with Guidant[1] —a personal automobile liability policy with limits of $250,000 per person and $500,000 per accident, and an umbrella protection policy with a $1,000,000 limit. Marshall County had a business automobile liability policy with a $300,000 limit through INA, which covered non-owned automobiles and provided coverage to the volunteer fire department.[2]
¶ 4. A dispute arose regarding which insurance company should defend the liti *146 gation and which provided primary coverage. In June 1998, INA filed a declaratory-judgment action against Guidant in the Circuit Court of Marshall County. INA asked for a judgment declaring, inter alia, that Guidant had a duty to defend all the defendants and INA did not have any duty to defend, and that Guidant’s policies afforded primary coverage for all defendants, while INA provided excess coverage only. INA moved for summary judgment in the declaratory-judgment action, but the trial court held the motion in abeyance pending a final determination on the merits of the underlying lawsuit. Following that ruling, INA provided defense counsel to Marshall County and the fire department in the Anderson lawsuit. Guidant defended Hingle.
¶ 5. Guidant eventually entered into settlement negotiations with the Andersons. In February 2003, Guidant notified INA of a settlement offer and asked INA to contribute its $300,000 policy limit toward the settlement. INA responded that it would not discuss settlement contribution until Guidant was willing to discuss reimbursement of INA’s legal costs. In October 2003, Guidant settled with the Andersons for $750,000. Guidant allocated $300,000 from its personal auto policy and $450,000 from its umbrella policy for the total payment of $750,000.
¶ 6. Guidant filed a motion for summary judgment against INA in the declaratory-judgment action, seeking contribution or reimbursement from INA in the amount of $450,000, the sum Guidant had allocated from its umbrella policy. Guidant asserted that its umbrella policy was excess to the INA auto policy. INA responded that it was not required to reimburse Guidant because Guidant was a voluntary payor. INA also renewed its motion for summary judgment, claiming Guidant should reimburse INA for the costs incurred defending Marshall County and the fire department in the Anderson litigation.
¶ 7. Through a series of orders and, eventually, a final judgment dated August 14, 2007, the trial judge ruled on both summary-judgment motions and dismissed the declaratory-judgment action with prejudice. The trial judge made the following findings: (1) Guidant was the primary insurer under both its policies, and until Guidant exhausted the combined $1.5 million limit from its policies, INA did not have an obligation to participate in the settlement; (2) Marshall County and the fire department were insureds of INA, and INA had a duty to provide a defense to those entities; (3) INA was not entitled to reimbursement of defense costs from Gui-dant; and (4) Guidant was not entitled to contribution from INA for the settlement, because Guidant was a voluntary payor. Guidant appealed the denial of its request for contribution and the finding that it was a voluntary payor. INA cross-appealed as to the denial of reimbursement of defense costs.
¶ 8. On appeal, this Court found that Hingle’s auto policy with Guidant was the primary insurance, but that Hingle’s umbrella policy was true excess coverage and it should not be applied until the Guidant personal auto policy and the INA business auto policy had been exhausted. Guidant I, 13 So.3d at 1279. Further, this Court held that Guidant was “entitled to move forward with its claim of contribution,” and INA would be liable for contribution if Guidant could prove that “it was legally liable to settle, and that the amount it paid the injured party or parties was reasonable.” Id. at 1280. Finally, this Court held that “INA should be entitled to all reasonable, necessary expenses incurred in the course of defending the fire department and Marshall County[.]” Id. at 1282. The judgment was reversed and the case *147 was remanded. Id. This Court’s opinion was handed down June 25, 2009. Id. at 1270.
¶ 9. On remand, INA filed a motion for defense costs in the amount of $55,846, plus prejudgment interest. Guidant filed a motion for summary judgment seeking contribution from INA in the amount of $800,000. Guidant asserted that it was “undisputed that Guidant was legally liable to settle” and that, in light of the amount of damages claimed by the Andersons, “the settlement amount was reasonable.” INA responded that Guidant’s conclusory statements were not sufficient, and that Guidant must actually prove that it was legally liable to settle and that the settlement amount was reasonable. A hearing on the motions was set for October 22, 2010. Four days before the hearing, Gui-dant filed its rebuttal and presented evidence to support its position. In light of the additional evidence, INA filed a Rule 56(f) motion for a continuance to conduct discovery. The motion was denied and the hearing took place as scheduled.
¶ 10. On January 6, 2011, the trial court entered a final judgment, granting Gui-dant’s motion for summary judgment and requiring INA to reimburse Guidant in the amount of $300,000. The trial court also granted INA’s motion for defense costs of $55,846, plus post-judgment interest, but denied INA’s request for prejudgment interest. INA instituted this appeal.
DISCUSSION
¶ 11. INA asserts that the trial court erred in granting Guidant’s motion for summary judgment on the claim for contribution because genuine questions of material fact exist. Alternatively, INA asserts that reversal is required due to several procedural errors made by the trial court. Finally, INA claims that the trial court abused its discretion by denying INA’s request for prejudgment interest. The issues presented by INA have been restated and reordered for purposes of this discussion.
I. Whether the trial court erred by denying INA’s Rule 56(f) Motion for Continuance.
¶ 12. Rule 56(f) provides a means by which a party opposing summary judgment can request a continuance to conduct additional discovery:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
Miss. R. Civ. P. 56(f). A trial court’s grant or denial of a Rule 56(f) motion for continuance is reviewed for abuse of discretion. Stallworth v. Sanford, 921 So.2d 340, 342-43 (Miss.2006) (citing Owens v. Thomae, 759 So.2d 1117, 1120 (Miss.1999)). If sufficient reasons are provided in support of a Rule 56(f) motion for continuance, a trial court “has the discretion to ‘postpone consideration of the motion for summary judgment and order among other things that discovery be completed.’ ” Owens, 759 So.2d at 1120 (quoting Prescott v. Leaf River Forest Prods., Inc., 740 So.2d 301, 306 (Miss.1999)).
¶ 13. To succeed on a Rule 56(f) motion for continuance, the moving party is required to provide specific reasons as to why it cannot oppose the summary-judgment motion without additional discovery and “specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant’s showing of *148 the absence of a genuine issue of fact.” Owens, 759 So.2d at 1120 (quoting Prescott, 740 So.2d at 307). This Court has advised that “Rule 56(f) is not designed to protect the litigants who are lazy or dilatory and normally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the possession of the other party.” Id. (quoting Marx v. Truck Renting & Leasing Ass’n, Inc., 520 So.2d 1333, 1344 (Miss.1987)).
¶ 14. The Guidant I opinion was handed down June 25, 2009, remanding this case to the trial court. Guidant I, 13 So.3d at 1282. INA filed its motion to enforce this Court’s judgment on April 6, 2010, seeking reimbursement of defense costs. Guidant filed a motion for summary judgment seeking a $300,000 contribution to the settlement from INA on June 21, 2010. On August 13, 2010, INA responded to Guidant’s motion for summary judgment and asserted that Guidant had faded to satisfy the requirements for proving it was entitled to contribution as required by this Court in Guidant I. A hearing on Guidant’s motion for summary judgment and INA’s motion for defense costs was scheduled for October 22, 2010. On October 18, 2010, Guidant filed its rebuttal to INA’s response to Guidant’s motion for summary judgment, this time setting forth evidence to support its claim for contribution. Because Guidant submitted this additional evidence only four days before the hearing, INA filed a Rule 56(f) motion to continue the hearing. INA asked for additional time to conduct discovery necessary to oppose Guidant’s motion. INA’s motion for continuance was denied.
¶ 15. INA asserts that the trial court abused its discretion in denying INA’s Rule 56(f) motion, because INA should have been allowed to conduct discovery regarding the evidence presented only four days before the hearing in order to fully oppose Guidant’s motion for summary judgment. It appears that INA was concerned primarily with the affidavit of Margie Warren, a Guidant employee who handled the Andersons’ claim, which was submitted with Guidant’s rebuttal. In its Rule 56(f) motion, INA stated that it needed additional time “to seek production of relevant materials, including Ms. Warren’s claims file and other relevant documentation, and to depose Ms. Warren[.]” In support of its motion, INA made the general statement that “[wjithout the ability to. conduct discovery on the issues raised in Ms. Warren’s affidavit and other arguments set forth in Guidant’s rebuttal, INA would be unable to properly oppose Gui-dant’s motion for summary judgment.”
¶ 16. Warren’s affidavit, which summarized the Andersons’ injuries and damages, did not provide any new information or evidence. Likewise, the additional documents submitted by Guidant — which included correspondence, deposition transcripts, and interrogatory responses — did not contain any new information that was unknown to INA, and INA likely had all the same documents. Other than seeking to depose Warren and obtain her claim files, INA did not identify any additional information that it needed. Surely INA knew there were Guidant employees who had worked on the Andersons’ claim. INA could have propounded interrogatories to determine the identities of those employees, and then requested Guidant’s claim documents and deposed Guidant’s employees at any time.
¶ 17. Because this case was on remand, INA knew exactly what Guidant needed to prove — that it was legally liable to settle and that the settlement amount was reasonable, as this Court had directed. If INA needed Guidant’s claim file to rebut what it knew Guidant would claim, INA *149 should have requested it. Certainly, it would have been prudent for Guidant to file its rebuttal and submit its evidence more than four days before the summary-judgment hearing. However, if INA needed evidence to rebut Guidant’s claims, it had plenty of time to obtain that evidence. The summary-judgment hearing took place sixteen months after this Court’s opinion in Guidant I, thus, INA had more than a year to conduct discovery. Further, this case has been in litigation for more than fifteen years; it is hard to fathom how INA needs more time to conduct discovery if it has failed to do so before now.
¶ 18. We reiterate that Rule 56(f) is not meant to be used as a last-ditch effort to obtain information that a party should have obtained previously. See Owens, 759 So.2d at 1120. INA did not provide specific reasons explaining why it could not oppose the summary-judgment motion without additional information. Id. INA said only that it needed to depose Warren and obtain her claim file and, as explained above, that could have been accomplished earlier. Otherwise, INA did not “specifically demonstrate” what information it sought to obtain through additional discovery, nor did INA explain what steps it had taken previously to obtain the needed information. Id. Because INA failed to meet these standards, we find that the trial judge did not abuse his discretion in denying INA’s Rule 56(f) motion for continuance.
II. Whether the trial court erred in granting summary judgment for Guidant because genuine issues of material fact exist.
¶ 19. This Court applies a de novo standard of review to a circuit court’s grant or denial of summary judgment. Kilhullen v. Kan. City S. Ry., 8 So.3d 168, 174 (Miss.2009). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). This Court views the evidence “in the light most favorable to the party against whom the motion has been made.” Kilhullen, 8 So.3d at 174 (quoting Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993)). However, the opposing party “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Miss. R. Civ. P. 56(e).
¶ 20. In Guidant I, this Court held that Guidant was entitled to contribution from INA if Guidant could prove that “it was legally liable to settle” and that the amount paid to the Andersons was reasonable. Guidant I, 13 So.3d at 1280. INA asserts that whether Guidant was “legally liable to settle” and whether the settlement amount was reasonable are both disputed issues, thus, the trial court should not have granted summary judgment. Naturally, Guidant responds that it produced undisputed evidence that it had a legal duty to settle and that the settlement amount was reasonable. Guidant claims that INA is focusing on issues that may have been disputed in the underlying matter, such as whether Hingle was liable, but that are either not material or not disputed here.
A. “Legally Liable to Settle”
¶ 21. INA claims that Guidant failed to prove that it was “legally liable to settle.” INA maintains that “legally liable to settle” is equivalent to “legally responsible” or “legally obligated to pay.” INA says that, because there was no jury verdict or *150 arbitration decision in favor of the Andersons and no admission of liability by any defendant, Guidant was not legally obligated to pay the Andersons. INA’s interpretation of “legally liable to settle” is contrary to this Court’s well-established policy favoring settlement and to this Court’s position on insurer’s duties to clients.
¶ 22. In Guidant I, Guidant argued that it was not a voluntary payor, and that it was entitled to contribution from INA. Guidant I, 13 So.3d at 1279. A “voluntary payor” is a “stranger or in-termeddler who has no interest to protect and is under no legal or moral obligation to pay.” Id. (quoting State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 255 So.2d 667, 669 (Miss.1971)). Guidant argued that, as an insurer, “it had a legal contractual obligation to protect and defend its insured,” and in fulfilling that duty to its insured, it “settled with the Andersons under compulsion.” Guidant I, 13 So.3d at 1279-80. In reaching our decision on the voluntary-payor issue, we wrote:
Our disposition of this issue is controlled by State Farm Mutual Automobile Insurance Company v. Allstate Insurance Company, 255 So.2d 667 (Miss.1971), wherein State Farm settled with its insured and sought contribution from Allstate. Id. at 668. The trial court granted Allstate’s demurrer, and State Farm appealed. Id. This Court reversed and remanded, finding that State Farm had the right to move forward with its claim of contribution. Id. at 669. In State Farm, this Court stated:
The majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer, not entitled to recover.
Id. (quoting 8 Appleman on Insurance § 4913, 398).
Here, as in State Farm, Guidant is entitled to move forward with its claim of contribution. However, INA is liable only for contribution up to its stated limits of liability, if Guidant can prove it was legally liable to settle, and that the amount it paid the injured party or parties was reasonable.
Guidant I, 13 So.3d at 1280. INA is correct that this Court had not used the phrase “legally liable to settle” prior to Guidant I, nor have we had the opportunity to interpret it since. However, reading the cases on which we relied in Guidant I provides the interpretation that INA seeks.
¶ 23. We consistently have held that an insurer must act in the best interest of the insured. In State Farm, we held that State Farm “was under a solemn obligation to defend its insured, to negotiate and settle all claims made against its insured, first according to [the insured’s] best interest, and then, secondly, according to State Farm’s best interest.” State Farm, 255 So.2d at 669. We have said that “the insurer has a fiduciary duty to look after the insured’s interest at least to the same extent as its own,” and in evaluating a settlement offer, the insurer must “make a knowledgeable, honest[,] and intelligent evaluation of the claim[J” Hartford Accident & Indem. Co. v. Foster, 528 So.2d 255, 265 (Miss.1988) (citing, inter alia, Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 419 A.2d 417, 422-23 (1980) (“insured’s interests must necessarily come first”); Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272, 275 (La.App.1974) (“insurer is the champion of the insured’s interests ... interests of the insured are paramount to those of the *151 insurer ... insurer may not gamble with the funds and resources of its policyholders”)).
¶24. An insurer has a duty to protect the interests of its insured, “which includes the duty to settle claims within the policy limits on objectively reasonable terms.” Jordan v. U.S. Fid. & Guar. Co., 848 F.Supp. 164, 171 (S.D.Miss.1993) (citing Hartford, 528 So.2d at 282 (“... in the context of possible excess exposure, and the insured’s demand that the case be settled within the policy limits, the insurer has a duty to accept an objectively reasonable settlement demand”)). Failure to do so puts the insured at risk of exposure to liability if a verdict is awarded in excess of the policy limits, which certainly would not be in the insured’s best interest. After reviewing the law from other jurisdictions, in Hartford, this Court held:
We adopt the prevailing view ... that when [a] suit covered by a liability insurance policy is for a sum in excess of the policy limits, and an offer of settlement is made within the policy limits, the insurer has a fiduciary duty to look after the insured’s interest at least to the same extent as its own, and also to make a knowledgeable, honesty and intelligent evaluation of the claim commensurate with its ability to do so. If the carrier fails to do this, then it is liable to the insured for all damages occasioned thereby.
Hartford, 528 So.2d at 265.
¶ 25. In addition to the requirement that an insurer protect the interests of its insured, this Court recognizes that the law and public policy favor the settlement of disputes. Sneed v. Ford Motor Co., 735 So.2d 306, 313 (Miss.1999) (“public policy favors settlement ... ”); McManus v. Howard, 569 So.2d 1213, 1215 (Miss.1990) (“The law favors the settlement of disputes by agreement of the parties....”) In light of the foregoing, INA’s interpretation of the phrase “legally liable to settle” to mean “legally obligated to pay,” requiring a finding or admission of liability, is contrary to the well-established law of this Court. It is evident that the phrase “legally liable to settle” meant that Guidant must prove that it had a legal duty to settle, or at least a legal duty to consider the insured’s best interest and to make an honest evaluation of a settlement offer within the policy limits.
¶ 26. Guidant’s personal auto policy provides, “We will settle or defend, as we consider appropriate, any claim or suit” in which damages covered by the policy are sought. A person seeking coverage under the policy is required to “[c]o-operate ... in the investigation, settlement[,] or defense of any claim or suit.” Guidant’s umbrella policy also provides that the insured is required to cooperate with the underlying insurer and the umbrella insurer “in the investigation, settlement[,] or defense of any claim or suit” and that Guidant “may investigate and settle any claim as [it] deem[s] appropriate.” In this case, Guidant was both the underlying insurer and the umbrella insurer. “[Ijnterpretation of an insurance policy is a question of law, not one of fact.” Noxubee County Sch. Dist. v. United Nat’l Ins. Co., 883 So.2d 1159, 1165 (Miss.2004) (citing Lewis v. Allstate Ins. Co., 730 So.2d 65, 68 (Miss.1998)). When an insurance policy is unambiguous, it will be enforced as written. Id. (citing Paul Revere Life Ins. Co. v. Prince, 375 So.2d 417, 418 (Miss.1979)). The Guidant insurance policies clearly and unambiguously put control of the defense and settlement in Guidant’s hands.
¶ 27. INA argues that summary judgment was improper because genuine issues of fact exist regarding whether Guidant had a “legal obligation to pay” the *152 Andersons, basically arguing that liability was disputed. In fact, liability was disputed in the underlying matter, but liability is not at issue here because “legal obligation to pay” is not the standard. Because Gui-dant was required to show a duty to settle, not an obligation to pay, INA’s claims in this regard are without merit. We find that Guidant’s policies clearly put Guidant in control of defense and settlement, and that Guidant had a legal duty to consider the best interest of its insured and to evaluate honestly a settlement offer within the policy limits. Thus, we must determine if the settlement offer was within the policy limits and if the settlement amount was reasonable.
B. Reasonable Settlement Amount
¶ 28. INA claims that genuine issues of material fact exist regarding the settlement amount, and that Guidant failed to prove that the settlement amount was reasonable. INA asserts that, because the duty to settle does not arise unless a settlement offer is made within the policy limits, then, to prove “reasonableness,” the settlement amount must have been within the policy limits. And INA claims that the $750,000 settlement was not within the policy limits known to Guidant at the time the settlement was reached. We disagree.
¶ 29. INA is correct that, at the time of settlement, the insurers disputed which policy was primary and which were excess. However, it was undisputed that Guidant’s personal auto policy, Guidant’s umbrella policy, and INA’s business auto policy applied. The dispute was only as to the order in which the policies applied. Guidant’s auto policy had a limit of $500,000 per accident, Guidant’s umbrella policy had a $1,000,000 limit, and INA’s policy had a limit of $300,000. Regardless of the order in which the policies applied, the total limit of the three applicable policies was $1,800,000. Thus, the $750,000 settlement was within that total limit. In Guidant I, this Court determined that Hingle’s auto policy with Guidant was the primary insurance, and the INA business auto policy was excess insurance to be applied second. Guidant I, 13 So.3d at 1279. Hingle’s umbrella policy with Gui-dant was to be applied last, only if the Guidant personal auto policy and INA business auto policy had been exhausted. Id.
¶ 30. Not only was the $750,000 settlement well within the policy limits, but Gui-dant presented ample evidence to prove that this amount was reasonable. As proof of its duty to settle and the reasonableness of the settlement amount, Gui-dant submitted:
— correspondence between counsel regarding the settlement offer;
— the Andersons’ interrogatory responses pertaining to the accident, injuries, medical expenses, and other damages, which they estimated totaled $3,100,000;
— the transcript of Mrs. Anderson’s deposition, which described Mr. Anderson’s abilities before and after the accident, his blindness, and Mrs. Anderson’s responsibilities in taking care of her husband since the accident;
— the transcript of Mr. Anderson’s deposition, which explained how his life has changed and how he relies on other people due to blindness; and
— Ms. Warren’s affidavit summarizing the Andersons’ injuries and damages, including Mr. Anderson’s permanent blindness, the Andersons’ combined medical expenses of nearly $200,000, and Mr. Anderson’s lost wages, estimated to be more than $100,000.
*153 Based on the Andersons’ injuries and medical expenses, lost wages, and Mr. Anderson’s permanent blindness, a jury-verdict could have exceeded the policy limits in this case. INA failed to offer any evidence to dispute the proof of damages provided by Guidant.
¶ 31. Finally, INA asserts that whether Guidant properly undertook a burden of settlement is a question of fact that must be considered by a jury. The existence or nonexistence of a legal duty— such as the duty to settle — is a question of law to be decided by the court. Lyle v. Mladinich, 584 So.2d 397, 400 (Miss.1991); Foster by Foster v. Bass, 575 So.2d 967, 972 (Miss.1990). A question of fact arises in this context when an insurer is charged with breach of that duty or “bad faith refusal to settle.” See Jordan, 843 F.Supp. at 171-72 (citing Martin v. Travelers Indem. Co., 450 F.2d 542, 551 (5th Cir.1971); Hartford, 528 So.2d at 283 (“Objective reasonableness [of the settlement offer] in this context is a question of fact committed by law to the trier of fact.”)). If an allegation is made for breach of duty, the court must first decide the legal issue, that is, whether a duty exists; if a duty exists, whether that duty was breached is a question of fact for the jury. See Donald v. Amoco Prod. Co., 735 So.2d 161, 174 (Miss.1999) (“... duty is an issue of law, and causation is generally a matter for the jury. Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty.”).[3] Guidant actually settled within the policy limits, so breach of duty or failure to settle within the policy limits is not the issue in this case. Therefore, we do not find a question of fact that should be submitted to a jury.
¶ 32. The pertinent facts regarding Gui-dant’s duty to settle and the reasonableness of the settlement amount were undisputed. INA failed to offer any evidence to dispute the proof of damages provided by Guidant. Genuine questions of fact may have existed regarding liability or other issues relevant to the underlying suit, but those issues are not relevant here. Thus, there were no genuine issues of material fact that would require the matter to be submitted to a jury. Cf. Bobby Kitchens, Inc. v. Miss. Ins. Guar. Ass’n, 560 So.2d 129, 134 (Miss.1989) (trial court correctly denied summary judgment on bad-faith claim where there were “multiple genuine issues of material fact,” “contradictory testimony,” and “there had not been an opportunity for full development of the facts”); Hartford, 528 So.2d at 266 (“Where evidence is produced either of bad faith or negligence, ordinarily the issue becomes a jury question.”). We find that the issues presented in this case were questions of law that were properly decided by the trial court. The trial judge did not err in granting summary judgment as to Guidant’s claim for contribution, finding that, under the facts presented, Guidant fulfilled its contractual obligation to pro *154 tect its insured, and the settlement amount was reasonable.
III. Whether the trial court committed procedural errors requiring reversal.
¶ 33. INA claims that reversal is warranted due to several procedural errors committed by the trial court. Part of this issue was the trial court’s denial of INA’s Rule 56(f) motion for continuance, which has been addressed separately above. The remaining alleged errors center around INA’s claim that the summary-judgment hearing was conducted like a trial on the merits. Specifically, INA claims (1) that Guidant should not have been allowed to put on witnesses to testify regarding liability; (2) that the trial court abused its discretion in denying INA’s objections to certain testimony that created questions of fact as to Guidant’s duty to settle; (3) that Guidant should not have been allowed to put on evidence that was introduced only a few days before the hearing; and (4) that the trial court improperly made findings of fact.
¶ 34. First, oral testimony is allowed at a summary-judgment hearing. See Miss. R. Civ. P. 43(e); Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 560 So.2d 142, 144 (Miss.1990); Cole v. Wiggins, 487 So.2d 203, 206 (Miss.1986). Rule 43(e) provides that “[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.” Miss. R. Civ. P. 43(e). This Court has explained the use of oral testimony at a summary-judgment hearing as follows:
[P]ertinent to the discussion of whether to allow the use of oral testimony at a summary judgment hearing are the Comments following Rule 43:
Although oral testimony may be heard on a motion for summary judgment, the court need not allow this, and its authority to do so should be exercised with care. The purpose of summary judgment — i.e. giving a speedy adjudication in cases that present no genuine issue of fact — is defeated if the hearing on the motion becomes a preliminary trial. 9 Wright & Miller, [Federal Practice and Procedure ] § 2417 [ (1983) ].
Therefore, based on the language of the Comments following Rule 43, the use of oral testimony at summary judgment hearings is clearly allowable, although the option of doing so should be exercised with caution. Although great care should be used to avoid turning a summary judgment hearing into a mini-trial, there are other countervailing factors to be considered as well.
[I]t is precisely because oral testimony, with the attendant opportunity for cross-examination, is the mode of presentation that is thought most appropriate for use at trial that it also is the most trustworthy form of proof available for a Rule 56 hearing. Accordingly, oral testimony should be used when there is reason to believe that it will be of significant assistance to the court and is reasonably circumscribed in scope. 10A C. Wright, A. Miller and M.K. Kane, Federal Practice and Procedure § 2723 at 63 (1983).
Crain, 560 So.2d at 144. A trial judge’s admission of oral testimony is reviewed for abuse of discretion. Id. at 145. “However, balanced against this discretion of the trial judge is the policy behind Rule 56(e), which is to consider any evidence at a summary judgment hearing that would be *155 admissible at trial.... Clearly, the oral testimony adduced at a summary judgment hearing would be admissible at trial.” Id.
¶ 35. INA objected to the testimony of Dana Swan, the Andersons’ lawyer, and David Norquist, Hingle’s lawyer. The attorneys testified regarding the accident, injuries, damages, and Guidant’s duty to settle. INA moved to strike Swan’s testimony in its entirety, claiming that it was irrelevant. INA argued that Guidant’s assessment of its own potential liability was relevant, but the assessment of plaintiffs’ counsel was not relevant. INA took issue with Norquist’s testimony because INA did not know he would testify until the morning of the hearing, but it is not clear whether that is being raised on appeal. The attorneys testified regarding the plaintiffs’ damages and the potential exposure of the insureds. This goes directly to the issue of whether Guidant fulfilled its contractual obligations to protect its insured and whether the settlement amount was reasonable. The trial judge did not abuse his discretion in allowing the attorneys to testify, and INA’s claims pertaining to the oral testimony allowed at the summary-judgment hearing are without merit.
¶ 36. Second, the other alleged procedural errors involve the admission of certain evidence. The trial court’s admission or exclusion of evidence is reviewed for abuse of discretion. Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 145 (Miss.2007); Busick v. St. John, 856 So.2d 304, 308 (Miss.2003). Although some of Guidant’s evidence was presented only four days before the hearing, whether to allow the evidence at the hearing was within the discretion of the trial judge. As set forth in Section I, supra, INA cannot realistically claim to have been surprised by any evidence presented at the hearing. Warren’s affidavit set forth facts about damages that were known to all parties. Likewise, the attorneys testified about known injuries and damages. Other than the affidavit and the attorneys’ testimony, it is unclear exactly what “evidence” INA would have excluded or what information was supposedly not known to INA prior to the hearing. INA has not provided any proof of prejudice or given any other reason why the trial court should have excluded the evidence. We find that admission of the evidence was within the discretion of the trial court, and the trial judge did not abuse his discretion.
¶ 37. Finally, INA’s claim that the trial court made findings of fact is without merit. INA asserts the same claims as set forth in Section II above. INA claims that, because these facts were disputed, the trial judge must have made findings of fact in reaching his conclusion. Further, INA references the conclusion of the trial court’s judgment, which states:
The Court FINDS as fact that [the] settlement amount paid by Guidant to settle prior litigation is fair, just[,] and reasonable; and
The Court FINDS as fact that Guidant was legally liable to the settling parties given the facts of the underlying case and that Guidant was prudent for settling for the sums that it paid and protecting all insureds, including those also insured by INA.
(Capitalization in original.) Notably, INA does not object to the court’s finding “as fact that INA expended $55,846.42 in reasonable and necessary attorney fees and expenses in the defense of certain defendants “and that is was” entitled to be reimbursed that amount.” Regardless, we do not understand these statements to mean that the trial judge made decisions on questions of fact. Rather, the trial judge came to these conclusions from the *156 undisputed facts. The questions of fact that may have existed regarding issues relevant to the underlying suit are not relevant here. To reach a decision on Guidant’s claim for contribution, the trial judge decided questions of law and relied on undisputed facts. The trial judge did not err in granting summary judgment where no genuine issues of fact existed.
IV. Whether the trial court correctly determined the amount of contribution owed by INA.
¶ 38. We agree with the trial court that Guidant is entitled to contribution from INA. However, we find that Guidant, the primary insurer, must exhaust the limits of its auto policy before INA is required to contribute to the settlement amount. “The longstanding rule in Mississippi is that the insurer for the owner of the vehicle involved in the accident is the primary insurer.” U.S. Fid. & Guar. Co. v. John Deere Ins. Co., 830 So.2d 1145, 1148 (Miss.2002). This rule was established in Travelers Indemnity Co. v. Chap-pell, in which this Court explained that the primary insurance must be exhausted before the excess insurance is available.
... the owner’s insurance has the primary liability. In such a situation, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy ha[ve] been exceeded. It follows that the so-called “other insurance” clause in the primary policy excluding or modifying liability if the additional insured has other valid and collectible insurance is inapplicable because the insurance under the excess coverage policy is not to be regarded as other collectible insurance available to the insured until the primary policy has been exhausted.
Travelers Indem. Co. v. Chappell, 246 So.2d 498, 505 (Miss.1971) (quoting Couch on Insurance 2d § 62:60, 508, 509 (1966)). The primary insurer does not pay an arbitrary amount that it deems sufficient, being less than its policy limits, and apportion the remaining amount to the excess insurer. The primary insurer is required “to pay what is mandated pursuant to the provisions of its policy and required by statute.”[4] U.S. Fid. & Guar. Co., 830 So.2d at 1149. Therefore, we hold that Guidant is required to pay $500,000, the “per accident” policy limit on Hingle’s personal auto policy. INA, which has the secondary vehicle policy, must pay the remaining amount up to its policy limit of $300,000. After Guidant contributes $500,000 to the settlement and its policy is exhausted, the remaining $250,000 is allocated to INA. To the extent that the trial court awarded a different amount, we reverse and direct the trial court to correct the amount on remand.
Y. Whether the trial court abused its discretion by denying INA’s request for prejudgment interest.
¶ 39. A trial court’s grant or denial of a request for prejudgment interest is reviewed for abuse of discretion. Aetna Cas. & Sur. Co. v. Doleac Elec. Co., Inc., 471 So.2d 325, 331 (Miss.1985). A trial judge’s discretion to award prejudgment interest comes from Mississippi Code Section 75-17-7, which provides:
All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing *157 the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.
Miss.Code Ann. § 75-17-7 (Rev.2009) (emphasis added).[5] This statute does not require, judges to award prejudgment interest, but allows the judge to determine the date from which interest will be calculated. The judge may determine that interest should be calculated only from the date of the judgment, rather than before.
¶ 40. This Court provided the criteria for awarding prejudgment interest in Upchurch Plumbing, Inc. v. Greenwood Utilities Commission:
It is well settled that in Mississippi a [trial judge] is afforded discretion in deciding whether to award prejudgment interest.... Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith. No award of prejudgment interest may rationally be made where the principal amount has not been fixed prior to judgment.
Upchurch Plumbing, Inc. v. Greenwood Util. Comm’n, 964 So.2d 1100, 1117 (Miss.2007) (quoting Stockstill v. Gammill, 943 So.2d 35, 50 (Miss.2006) (internal citations omitted)). Further, the party requesting prejudgment interest is required to make a demand for prejudgment interest in its complaint. Id. at 1118.
¶ 41. In Guidant I, we held that INA was entitled to reimbursement from Guidant for reasonable and necessary costs of defending Marshall County and the volunteer fire department. Guidant I, 13 So.3d at 1282. On remand, INA filed a motion for defense costs in the amount of $55,846, plus prejudgment interest.[6] The trial court granted INA’s motion for defense costs of $55,846, plus postjudgment interest, .but denied prejudgment interest. *158 As the basis for denying INA’s request for prejudgment interest, the trial court said the defense costs “were unliquidated and only recently documented.” INA claims that it met the requirements for allowing prejudgment interest, including preserving the right to seek prejudgment interest by making the proper demands in its pleadings. INA claims that the defense costs were liquidated when they were billed and that, because payment was been outstanding since the first invoice was sent in 1996, INA is owed prejudgment interest as compensation for the time value of money.
¶ 42. INA is correct that this Court has held that damages are liquidated when the party seeking reimbursement was billed. Upchurch Plumbing, 964 So.2d at 1118. INA submitted proof of defense costs by way of bills and affidavits. After reviewing INA’s bills, Guidant did not dispute the amount or the reasonableness of INA’s defense costs. Because the amount of INA’s defense costs was known to the parties prior to the trial court’s judgment, we find that the defense costs were “fixed prior to judgment” as required. INA also included the required demand for prejudgment interest in its complaint. Because INA met both of these requirements, the trial judge had discretion to award prejudgment interest if INA fell into one of the two categories in which prejudgment interest can be awarded: (1) “the amount due is liquidated when the claim is originally made,” or (2) “denial of a claim is frivolous or in bad faith.” Upchurch Plumbing, 964 So.2d at 1117 (emphasis added).
¶ 43. The amount due was not known when INA’s complaint for declaratory judgment was filed in 1998. The bills submitted by INA’s attorneys covered 1993 through 2003, so the total amount of the defense costs could not have been known in 1998. Thus, the only way INA could have received prejudgment interest would have been if Guidant’s denial of its claim for reimbursement was frivolous or in bad faith.[7] In Guidant I, we found that Guidant was required to reimburse INA, but we did not find that Guidant’s earlier refusal to do so was in bad faith. And INA has not made that argument on appeal. In fact, there is no evidence in the record that INA ever made that argument in the trial court. The trial judge is in the best position to determine whether Gui-dant’s denial of reimbursement was frivolous or in bad faith, and the trial judge clearly did not make that finding. Whether to award prejudgment interest rests in the sound discretion of the trial court. Even a finding of all of the required factors does not make an award of prejudgment interest mandatory. See USF & G Co. v. Conservatorship of Melson, 809 So.2d 647, 661-62 (Miss.2002). We do not find abuse of discretion by the trial judge in denying INA’s request for prejudgment interest.
CONCLUSION
¶ 44. We affirm the trial court’s denial of INA’s Rule 56(f) motion for continuance and the denial of INA’s request for prejudgment interest. We also affirm the trial court’s granting of Guidant’s motion for summary judgment on the claim for *159 contribution, and we find that INA’s claims of procedural errors warranting reversal are without merit. While we agree -with the trial court’s finding that INA is required to contribute to the settlement, we reverse the trial court’s determination that INA is required to contribute its $300,000 policy limit. We hold that Guidant is required to exhaust its $500,000 per-accident limit before INA’s insurance is to be applied. Guidant settled with the Andersons for $750,000; after the $500,000 limit from Guidant’s personal auto policy is applied, INA is required to contribute the remaining $250,000 to the settlement. In sum, the Marshall County Circuit Court’s judgment is affirmed in part, reversed in part, and remanded for the trial court to enter a final judgment consistent with this opinion.
¶ 45. AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ„ CONCUR. KING, J., NOT PARTICIPATING.

. Guidant formerly was known as Preferred Risk Mutual Insurance.

. A fourth policy originally was involved: the Marshall County Board of Supervisors had a business automobile liability policy with a $300,000 limit through Titan Indemnity Company. Titan was dismissed after the trial court determined that Hingle was not an employee of Marshall County, so Titan did not have a duty to provide coverage, a defense, or indemnity to any of the parties.

. See also Foster, 575 So.2d at 973 n. 7 (citing Harper, James & Gray, The Law of Torts, § 18.8, at 743 (2d. 1986)) ("The duty issue, like any other can be broken down into (a) rules and (b) the application of those rules to the concrete facts of a given case. Here as elsewhere the court lays down the rules. But the application of those rules to particular facts should be and in fact usually is, committed to the jury on the duty issue as upon any other.”); Ward v. Hobart Mfg. Co., 450 F.2d 1176, 1181 n. 15 (5th Cir.1971) ("The decisions of the Mississippi Supreme Court indicate that whether a duty exists in a negligence case is a question of law to be determined by the court.... Once it is decided that there is a duty, the question of the extent of that duty, or the appropriate standard of conduct to be applied seems to be a mixed question of law and fact.”).

. One such statute requiring the insurer to pay a certain amount is the uninsured motorist statute. See Miss. Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320, 1323 (Miss.1986) (citing Miss.Code Ann. § 83-11-101, et seq.)).

. Guidant argues that prejudgment interest can be awarded only in contract matters. However, Mississippi Code Section 75-17-7 addresses contractual and noncontractual matters. In a noncontractual matter, the judge has discretion to award interest beginning at any date after the complaint is filed. Miss.Code Ann. § 75-17-7 (Rev.2009). A contract is not required for prejudgment interest to be awarded. See In re Guardianship of Duckett, 991 So.2d 1165, 1180-83 (Miss. 2008) (bank argued that chancellor should have used "the variable interest rate earned by the savings account in which the guardianship funds were deposited” to calculate prejudgment interest; this Court determined that the judgment was not "founded” on the savings account or any breach of the account agreement; the portion of Section 75-17-7 relevant to this case was the second sentence, "All other judgments or decrees thus, the chancellor had discretion in setting the rate for prejudgment interest); Fred's Stores of Miss., Inc. v. M & H Drugs, Inc., 725 So.2d 902, 921 (Miss.1998) (award of prejudgment interest upheld in noncontract action; this Court recognized that prejudgment interest was based on second sentence of Section 75-17-7 pertaining to judgments not founded on contracts).

. Guidant argues that the "mandate rule” bars INA's request for prejudgment interest. Guidant claims that a determination on prejudgment interest was outside this Court's mandate in Guidant I, and it was for the trial court to determine whether INA's defense costs were reasonable and warranted reimbursement. This argument is without merit. INA requested defense costs and prejudgment interest in its complaint for declaratory judgment, filed in 1998. Because the trial court originally denied INA's request for defense costs, prejudgment interest was not an issue before this Court in Guidant I. On remand, the trial court awarded reimbursement of defense costs, at which point INA’s request for prejudgment interest became relevant for the first time. We find that prejudgment interest was part of INA's original request for reimbursement of defense costs, therefore, it was proper for the trial court to consider prejudgment interest along with defense costs on remand.

. Guidant claims that INA is not entitled to prejudgment interest because the amount of damages was not liquidated when the complaint was filed. This argument is without merit. In every case, the amount does not have to be liquidated when the claim is filed; the other option is that the denial of the claim was "frivolous or in bad faith.” Upchurch Plumbing, 964 So.2d at 1117. If the amount was not liquidated when the claim was filed, then the parties must proceed under the "bad faith” prong, in which case the amount must be fixed prior to the judgment. Id.